Matthew Herbert Bennett is here for appellate Lofton. William J. Atkins is here for appellate Hardigree. Mr. Bennett, you may proceed. Thank you, your honors. If it may please the court, again my name is Matthew Bennett with the Bennett Law Office. I represent Marc Lofton, who is a former police officer for the city of Statham, Georgia. And this case arises out of the denial of summary judgment on the basis of qualified immunity and the grant of a partial summary judgment to plaintiff Anthony Hardigree on his claim for unlawful entry under the Fourth Amendment. We appreciate the court giving us an opportunity to argue this because this issue raises a far-reaching, has a far-reaching effect on police practices involving narcotics investigations. It's a pretty common practice to understand that the goal of an investigation would be to identify where the drugs are being manufactured, where they're going to be located, how they're being sold, and to stop the operation. And this operation, or these investigations, are similar to pulling a thread on a sweater. You're pulling it slowly to be able to find out how far and how deep this goes. And in this case, the district court's decision effectively stops the law enforcement officers from being able to pull that thread all the way through and actually investigate crimes in real time. Well, the district court put together a pretty extensive, comprehensive, 60-page order determining that you pretty much need a warrant to enter a home without absent probable cause or exigent circumstances. Why shouldn't we affirm the decision of the district court based on the absence of probable cause or exigent circumstances here? Mr. Hardegre didn't own the house. He just told the officers that he didn't own the house. He just lived there. He said he gave Rogers a bottle of water. He denied giving him anything else. He denied that Rogers delivered drugs to the house. He denied the officers permission or consent to enter the home and search the house. He did so politely. He said his sister owned the house, and he would just go and ask her for permission for them to enter the house. There were no drugs in plain view. How does this record support probable cause to enter the home or exigent circumstances based on those facts and circumstances? Yes, Your Honor. You have to go back to how the officers actually got to the house. They got to the house after following a man by the name of Anthony Rogers, who was a known drug dealer in the city of Statham and Barrow County, who left a known drug house, drove to Mr. Hardegre's house, which was only a couple minutes away. When the officers were able to locate his vehicle, he was actually under surveillance by the Barrow County Sheriff's Office. When they located Mr. Rogers' vehicle, he was seen exiting and leaving Mr. Hardegre's home, where he resided, with a bag. When they stopped Mr. Rogers and searched his vehicle, they identified the bag, which was the same one he was carrying when he left the home, that had 29 grams of methamphetamine in the bag. As they were going through doing that search, ultimately, after they found the drugs, identified the passenger in the vehicle, a state trooper by the name of Garrett Smith went to the resident and knocked on the door. This is about 20 minutes after they were able to secure Mr. Rogers, his passenger, wait for the lead investigator, Deputy Norris, to arrive at the scene, update him on... ...the conversation that the officers had with Mr. Rogers in advance of the officers going to the home where Mr. Hardegre was residing? It's in part of what he did before going to speak to Mr. Hardegre, but also during the conversation. There were inconsistencies between the reason why Mr. Rogers said he was at the house and what Mr. Hardegre... Did Rogers tell the officers that he got drugs from the house? No, sir. No, Your Honor. However, the bag that had the drugs in it, he was seen carrying from the house. So that led the officers to need to investigate whether or not those drugs were provided from that house or were those drugs being stashed at that house. It was an ongoing investigation to determine whether or not that house was actually involved in Mr. Rogers' drug dealing operation. Was the home secured when Officer Hardegre conducted the knock and talk? Was the home secured? There was an officer in the back by the back door, right? The back door, Your Honor, in this case was actually kind of the front door, I believe is where they're talking about. The actual car that Mr. Rogers was in was right parked just a couple feet from that door. Why couldn't the officers have secured the house and obtained a warrant, if there was enough probable cause to do so, to search the house? They did not... The house was not secure. They went and knocked on the door to figure out if anyone was inside the home. Trooper Garrett Smith actually knocked on the door, Your Honor. When they got there, a woman answered. My point is, Mark Waltman did not know that there was an actual woman inside. The only person he spoke to was Mr. Hardegre when he came to the door. When they got to the door... This is Judge Anderson talking. I know that Hardegre told the officers that Rogers came to get a glass of water, that's what he said first, and then later to get a job with his brother's welding shop. Did the officers already know that Rogers had said that he had gone there to see his girl? Yes, Your Honor, they did. That is something that Mr. Rogers... They found that out when they were interrogating Rogers before they ever approached the door. Yes, Your Honor. And that's why there was that inconsistency in the conversation that Mr. Hardegre presented to them. This is Judge Newsom. Let me ask you just a quick question about procedural posture. I mean, it strikes me that to the extent what you are seeking to do here is to resist a summary judgment granted in Hardegre's favor over your qualified immunity objection, you might be allowing yourself to get pulled down, dragged down into a debate of the merits when what you might ought to be saying is, you know, on Officer Loftin's facts, what I need to show is that there was not probable cause but arguable probable cause. Is that right? Do I have the procedural posture right? I mean, because summary judgment was granted against you on the unlawful entry claim, aren't we reading the facts in the light most favorable to you? Yes, Your Honor. That is the exact procedural claim where we're at, our posture of this case. And according to the facts that Officer Loftin has, which are not in dispute, those are the facts I was explaining to Your Honors. Well, plus the important fact that on your facts, Mr. Hardegre, after the encounter at the door, turned and sprinted inside, right? Yes, Your Honor. And that is actually what caused our officer, Mark Loftin, to actually enter the house. Mr. Hardegre was told not to move, to stand up, to stand where he was at, or to come outside when they decided, after he told them he was not giving consent to search the home. I thought the district court found that, based on this record, he didn't sprint. He walked calmly away. He was cooperative with the officers, according to Judge Story's order. And he said, I'm going to ask my sister, who owns the home, if it would be permissible for you to come in and search the home. And at that point, the officers ran through the door and tased him in the groin. Is that not what the district court determined that the record in this case reflects? That is what the district court determined. However, we find that to be incorrect, based off of the video. And under Scott v. Harris, you can clearly hear on the video from Mark Loftin, him tell Mr. Hardegre not to move. At that point, they were deciding whether or not to get a warrant to continue to do this search. Two-minute warning, counsel. Mr. Hardegre, I presented no evidence where the officers could not decide to ask for consent. This is Judge Anderson. This is Judge Anderson talking, picking up on Judge Newsom's question. There are two issues on appeal, really, I think. Correct me if I'm wrong. One is, you challenged the district court's grant of partial summary judgment in favor of Hardegre. And two, you are challenging the district court's denial of your motion for summary judgment based on qualified immunity. So with respect to the first of those issues, we would assume the fact's in your favor with respect to whether he just walked back or whether he ran back. But with respect to your own summary judgment and whether you can get out before going to trial on qualified immunity, we would assume that he merely walked back in favor of the plaintiff. Is that not true? Your Honor, that would be correct. It seems to me that on your motion, whether you can get out on qualified immunity such that you're entitled to summary judgment, you have to assume that he merely walked back. But you do still have the facts that you've got this drug dealer coming to the house carrying a backpack that had drugs in it. You have Rogers saying he went there to see his girl. And you have Hardegre saying he came just to get a cup of water and then later adding that he wanted a job at my brother's welding shop. So it seems to me the question is whether or not the officer had reasonable suspicion or possibly arguable probable cause, and then whether he had antecedent circumstances. It seems to me those are the issues that will resolve whether or not we can grant your summary judgment. Yes, Your Honor, and based on the law that we have... Your time has expired. You can finish answering the question, Mr. Bennett. Thank you. Based on the law that we have, the reasonable suspicion is based off of the conversations with Mr. Rogers, as well as going to the door and using the answers that Mr. Hardegre provided. That would allow the officers to be able to continue their investigation. Judge Story said there was reasonable suspicion for the investigation and for the knock and the talk. But he relied on our decision in United States v. Santa that the mere fact that there's probable cause that drugs are inside a home on its own is not enough to give rise to exigent circumstances. Didn't we say that in United States v. Santa? I don't believe that went as far as that, Your Honor. I believe in Santa the issue in that case was also just going in without an actual warrant nor taking the time to actually go get a warrant when there was time to get a warrant. In this case, they're at the door without having previous knowledge of anything dealing with this house other than Mr. Rogers actually leaving the premises with a bag of methamphetamines. In this case, it would be the opportunity to investigate that under McArthur and Segura to be able to secure the residence and at least bring it to a judge to ask for a warrant before going into the house. And that's the defining factor. They did not go in the house to search, Your Honor, until after Mr. Hardegre actually left the front door, which was admitted by him and his testimony. Thank you, Mr. Bennett. We'll hear from Mr. Atkins. Judge Wilson, Judge Newsom, Judge Anderson, good morning and may it please the court. My name is William Atkins and together with my co-counsel, Zachary Meyer, it is our privilege to represent Anthony Hardegre. We respectfully request the court affirm the district court's decision granting summary judgment to Mr. Hardegre on his unlawful entry claim and denying Mr. Loftus' motion on Mr. Hardegre's remaining claims. This is Judge Newsom. Can you go ahead and address at the outset the issue that Judge Anderson and I were getting at? I just want to make sure I've got my head screwed on straight about sort of whose version of facts we're looking at. Since you got summary judgment on the unlawful entry claim, don't we have to review that claim, the facts underlying that claim, in the light most favorable to the officer? Yes, Your Honor. I believe that you do, Judge Newsom. And when you do, you have to look at the actual facts, not the facts that have been represented to you, both in argument and on appeal. And I'd like to give you a couple of good examples of that. First of all, let's start with what the officers knew about this black bag. We would direct the court to take a look at the video of Guymon, who is the officer who actually spoke to Mr. Rogers. Neither of the other officers spoke directly with him prior to entering the house. What she said, and this is the actual time stamp, not the time of the day, but the time of the tape. At 2320, she says, when I started to drive by, he was coming out of the house. Of this house? Guymon? Yeah. And when he was getting in the car and I threw it in reverse and backed in. Both Mr. Loftin and Mr. Norris, the two officers at the door when they went in, admitted in their depositions that they didn't know whether he had a black bag. That would be one example. Turning directly to the issue. This is Judge Anderson talking. I think our law, however, is that we look at what the officers knew as a group. Not what any particular officer thought. Is that not true? That's true, Your Honor. Although in that context, Judge Anderson, what the courts look to is whether that collective knowledge was actually known to the officers or communicated in some form or fashion. And there's no indication here. Indeed, the officers admit that nothing about the black bag was ever communicated to them. Let's talk about, though, the central issue, which is this running away from the door. Let's make it simple. First of all, Judge Anderson, I'm not sure it matters. Even if you accept that fact as true for purposes of the grant of summary judgment on the unlawful entry claim, Kentucky v. King instructs that it doesn't matter. Because that exigency, if it was an exigency at all, was created by the defendant's actual violation of the Fourth Amendment. And that is the attempt to detain Mr. Hardegree inside his home without either probable cause, or we submit reasonable articulable suspicion, or exigent circumstances. That, of course, occurred earlier in the conversation. But for both of those things, too, I mean, right for the legality of the detention, whether it's reasonable suspicion or probable cause, because it's inside the home, don't we also have to view the fact in the light most favorable to Lawson? Yes, you do, Your Honor. And we don't think that those... I guess it's a little hard for me to imagine with the laundry list of things that your adversary kind of marched through the sequence of events that there's not, at least for purposes of this claim, arguable probable cause. To effective detention, even inside the home. If it is inside the home, I'm not sure that it is, frankly. We've got this kind of like metaphysical Star Wars type, you know, sort of one person inside, one person outside. But if it is inside the home, why isn't that laundry list of considerations sufficient for arguable probable cause? Let me start with that last point, Judge Newsom. We don't think there's anything metaphysical about this at all. I think the court said so just last year, Bailey v. Swindell. Yeah, I mean, I know all about Bailey. I know you do. Yes, but so, I mean, Bailey was a physical entry, right? And that's ultimately what we end up with here. The important salient fact is that Mr. Hardery's feet were firmly planted inside his house. He wasn't standing, you know, half in and half out. He was inside his house. Let me turn to the laundry list for a moment. The defendant does an admirable job of extrapolating lots of facts from what are effectively two facts. The investigation itself into Rogers doesn't help the defendant. What we know about that investigation is that Rogers' house was under surveillance. It was under surveillance because the officers knew that his modus operandi was to sell drugs from his house. Because the parking lot was invisible, was not visible from the street. So people could go in, they couldn't be seen, do their business and leave. They began to tail Mr. Rogers, lost him, and it wasn't two minutes. We don't even know if he went directly to Hardery's home because the officers lost him. When you watch the video, you'll see both Guyman and Loftin driving around trying to find him. They even passed each other, I believe, at one point. The point being, and you'll hear in the audio, that the plan was to stop him. It doesn't even appear that the officers had any intention to see if there was a traffic violation first. So the point is, the drugs were exactly where they expected to find them as part of their investigation. On Mr. Rogers in his car. There's absolutely nothing in this record that drew the officers' attention to the house. Other than Rogers' mere presence outside the home. And the fact that he had been seen by an officer as she pulled by, leaving the house. The cases are legion. And Judge Wilson referred to the court's opinion in United States v. Santa, which the district court relied on. Their legion, that the mere presence of contraband. And in Santa, by the way, they had probable cause that the contraband was inside the house. Probable cause really wasn't an issue. And what the court said there is, the mere presence of contraband does not give rise to exigent circumstances. That's a quote directly from the opinion. But don't we have more here on Officer Loftin's facts? Maybe we have the mere presence of drugs. But don't we also have, and maybe you were going to address this. But don't we also have what the defendant characterizes as the sudden flight into the house? Your Honor, let's assume for purposes of the question that in fact the court were to decide it was sudden flight. Assuming his facts to be true. So just help me with that as a descriptive matter. Is that his facts? Does Loftin say there was a sudden flight? What Loftin says is that Mr. Hardigre turned and went into the room. Went further into the house and ran. Ran. It seems to me that's a pretty critical distinction. Because on your facts you say it was a very calm turning and sort of lazy retreat into the house. And Loftin says he sort of hightailed it and ran. Those are two totally different things it seems to me from an exigent circumstances perspective. And Your Honor, I think the important thing to touch on there is that he doesn't just say run. He also says that that running was meaningful to him because he didn't tell him where he was going. And that's flatly contradicted by the audio tape. We hear him... Judge Anderson, what about the fact that he, this known drug dealer, goes to the door of this residence with a backpack. That has drugs in it. And he says he's going there to see his girl. And the residence says, Hardigre says, he came to get a glass of water. Why isn't that pretty suspicious? Your Honor, first of all, I believe the court's referring to what we hear at 8 minutes and 45 seconds in Guymon's video. And while it is admittedly unclear, the dialogue that I heard or understand it to be is, Is this where you stay, Guymon? Mr. Rogers, no, I just drove by with my girl. There was in fact a girl in the car. Now, that is a matter of interpretation. It is an admittedly unclear video. Nonetheless, the conflict isn't a significant one. And ultimately doesn't matter because we were hearing a knock and talk. And at best, at best, viewing the light in his favor, when the officers approached the doorway, they had reasonable suspicion. What Norris said was they had exactly one fact. That Rogers was seen leaving the house. That fact alone, whether we look at Holmes v. Kucinda, that talks about a person's mere propriety and presence at the scene of a crime, Not being sufficient to support probable cause, or any number of other opinions, That fact alone certainly doesn't arise probable cause. And that's what they had when they got to the doorway. Whether that additional fact, the conflict that you raised, further aroused suspicion, Doesn't change the fact that Mr. Hardegree, in that voluntary encounter, had a right at that moment, Long before he fled from the doorstep, had a right to do exactly what he did. Which was to say, I'm going to close my door and go call my sister. And that's what he told them. They asked him to go call his sister, and he said, I'm going to go call my sister. And I think what the district court noted, is in that moment... What about the theory that Loftin made a terrorist stop at the door, When he ordered Hardegree to remain right there, you are detained, he said. He had reasonable suspicion for a terrorist stop, and exigent circumstances, Which under the Moore case in our circuit, is at least arguably, It's not clearly established otherwise, that a terrorist stop inside the home, With reasonable suspicion, plus exigent circumstances, is enough. And then, when he goes away, whether running or walking, he is disobeying the order, And there's probable cause for obstruction of an officer. Your Honor, first of all, with regard to Morby Pedersen, The holding in that case is as to whether reasonable or articulable suspicion Would ever justify entering the home. The court's quote is, we cannot see how law enforcement could enter a home To detain a person on reasonable or articulable suspicion, Much lower than probable cause, without exigent circumstances. That just makes no sense to us. We submit that at the time that this incident occurred, At the moment when he says, I'm going to follow your command, essentially, And go call my sister, his words are, oh yeah, I'll call her. In that moment, they say, whoa, stay right there. Our position would be that in that moment, based on the limited information they had, And what they didn't know, that there was no reasonable or articulable suspicion. The house had never been the target of investigation. No occupant was known to the defendants, or had been ever involved in drugs, As far as they knew. The behavior was inconsistent with Rogers' known modus operandi. There were no drugs in plain view, there was no odor of drugs, He did not appear to be under the influence, And he was trying to cooperate with the officers, While firmly asserting his rights not to give consent. Do we know from the record whether or not the home was searched for drugs? After the fact, yes it was, your honor. Were any drugs found? There was a baggie found with what appeared to be residue, It was never formally tested, Nor was anybody ever charged with the possession of drugs in the home. And that's not a disputed fact. Let me clarify one thing. Is there not enough evidence that the officers, collectively, Could have suspected that, i.e. reasonable suspicion, That there were drugs in the backpack that he took to the house, And returned from the house? Your honor, first of all, again, the question assumes the fact that we submit Is not within the collective knowledge of the officers, But putting that aside, I think the officers can reasonably believe That the drugs at some point were inside the backpack. I note that the record actually indicates that when the drugs were found in the car, According to the incident report that was filled out, They were found in plastic baggies, they were outside of the black bag. Again, your honor, ultimately we don't think that that disputed fact, If in fact that's what it is, ultimately makes a difference here. Because all it gives the officers is the mere presence of contraband on the scene. In the United States v. Santa, in 2000, It's crystal clear that that alone might give them reasonable suspicion, But it doesn't give them a probable cause to enter the home. And of course, we can go back even further than that to your bar of Illinois, The Supreme Court decision in 1980, which says that the mere presence at a crime scene, Mr. Harderby's not even at a crime scene, he's inside his home. He never left there. The crime scene was outside. It was in Mr. Rogers' car. Let me finish by saying this, Even if the court were to determine that under Mr. Loftin's facts, There's a dispute as to whether the action was legitimate, The best outcome for him is this goes to trial. And that's where a case like this involving the sanctity of the home belongs, In front of a jury. Let them decide. Thank you, your honor. Thank you, Mr. Atkins. Mr. Bennett, you have reserved some time for rebuttal. Thank you, your honor. Let me touch base on one thing. We have talked about Santa a lot. And the one big thing about Santa was the person inside the home, The reason why there was no accident circumstances, Was because the suspects inside the home had no idea that they were under surveillance. And in fact, in this case, once they go to the door, And they do their knock and talk, which is perfectly acceptable, Mr. Hardigree now knows that he's under, Or is suspected of being involved with Mr. Rogers, And that there could be, that the officers are looking at him for drugs in his home. So the exigency is there, Because if, as was pointed out in Kentucky v. King, Narcotics are notorious for being destroyed, If the suspect is given the opportunity to do so, To go in and destroy those. So what ends up happening is, As they have their inconsistencies, And they have the reasonable suspicion, They are now allowed to do that terrorist op, To be able to finish their investigation, And either exclude Mr. Hardigree, Or find the evidence to say that maybe he is involved. And that's what they were doing, By following the Supreme Court's guidance, Under MacArthur and Secura, Which was, preserve the status quo, But take it to a judge if we can, And ask for a warrant. What Mr. Hardigree did was, He took that avenue away from the officers. When the recording is clear, The officers withdrew their request for consent. At that point, This is Judge Wilson, What should Mr. Hardigree have done at that point, Rather than go back and ask his sister, If they can consent to a search of the home? What should he have done instead? What he should have done, Would be to stand there at the door, Or step outside. That protects his privacy. But he didn't give the officers consent to search the home. You're right, your honor. He did not give consent, But the officers under Terry V. Ohio, Had the ability to do an investigation. If he'd stood right there, And followed that command to stand right there, The officers would have been entitled, At that point, To walk into the home, And search the home for drugs? No, your honor. They would not have. They would have been able to stand at that door, Under Illinois V. MacArthur, Send an officer to get a warrant, And then they would be able to search the home without the warrant. They would have had to go downtown and get a warrant, And have them stand right there until they got the warrant, Assuming that they had probable cause to get the warrant. Is that your answer to the question? Yes, your honor. And that's what the Supreme Court has directed officers to do in this circumstance, Would be to go seek the warrant, And not rely on an exception. There's one additional thing I do want to point out to the court, That Mr. Harder Creek's counsel has continued to try to point out, Is this issue of the bag. What the record makes clear is, All the officers understood that the bag that they were talking about, Was the same bag that Deputy Diney, Counselor, your time has expired. Called leaving the house, your honor. And that's why we ask that there was enough probable cause, And reasonable suspicion, To justify this detention and stop, And that qualified immunity should have been in play. All right, thank you Mr. Bennett and Mr. Atkins.